UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
N.J., individually, and as parent and natural guardian of N.J.
and A.J., minor children, individually,

                                           Plaintiffs,

        -against-

STATE OF NEW YORK, NEW YORK STATE
EDUCATION DEPARTMENT and MALVERNE UNION
FREE SCHOOL DISTRICT,

                                     Defendants.
----------------------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
11-CV-5935 (ADS) (AKT)

**APPEARANCES:**

**DLA Piper US LLP**
*Attorneys for the Plaintiffs*
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
      By:  Stephen P. Davidson, Esq.
             Mark Deckman, Esq., Of Counsel

**Eric T. Schneiderman, New York Attorney General**
*Attorneys for the State of New York and the New York State Education Department*
200 Old Country Road, Suite 460
Mineola, NY 11501
      By:  Dorothy O. Nese, Assistant Attorney General

**Frazer & Feldman, LLP**
*Attorneys for the Malverne Union Free School District*
1415 Kellum Place
Garden City, NY 11530
      By:  Joseph W. Carbonaro, Esq., Of Counsel

**SPATT, District Judge**.

      The plaintiffs in this case are N.J. and her children N.J(m)[1] and A.J ("the plaintiff children" and collectively "the Plaintiffs"). The Plaintiffs allege that they are "homeless" as

---

[1] Because the minor child N.J. has the same initials as his mother, the Court will refer to the minor child as "N.J.(m)".

1

defined under federal and state law. The Plaintiffs have commenced this action against the Malverne Union Free School District ("the District"), the State of New York ("the State") and the New York State Education Department ("the NYSED" and together with the District and the State "the Defendants"). The Plaintiffs allege that the Defendants denied to them the rights afforded to homeless children in obtaining a free public education in violation of the McKinney-Vento Act, 42 U.S.C. § 11431 *et seq.*, New York Education Law § 3209, and 42 U.S.C. § 1983. Presently before the Court is a motion by the Plaintiffs for a preliminary injunction preventing the District from disenrolling the plaintiff children from the schools they currently attend within the District, and an order requiring the District to arrange for the plaintiff children's transportation in accordance with the McKinney-Vento Act and New York law. For the reasons set forth below, the Plaintiffs' motion is granted.

## I. BACKGROUND

On May 8, 2009, the home where N.J.(m). and A.J. lived was destroyed by a fire. At the time, both N.J.(m) and A.J. attended public school in the Malverne Union Free School District. After the fire, the Plaintiffs rented the upstairs apartment of a residence owned by N.J.'s friend E.V., which was located in Lynbrook ("Lynbrook Residence"). Because the Lynbrook Residence was also within the District, N.J.(m) and A.J. continued to attend public school within the District while living there. Although the circumstances surrounding their departure are disputed by the parties, neither party disputes that, at the end of the summer in 2011, the Plaintiffs moved from the Lynbrook Residence to an apartment in the Bronx belonging to N.J.'s boyfriend, V.C. ("the Bronx Residence").

The Bronx Residence, which is located outside of the District, is a single bedroom suite in the basement of a home that V.C. owns and leases to another family. (Compl., ¶ 20.) N.J.(m)

and A.J. do not have a bedroom in the Bronx Residence and sleep on a sofa in the living room of the basement. (Id.) According to the Plaintiffs, their living arrangement in the Bronx Residence is not a permanent housing solution, but rather "a temporary situation necessitated by economic hardship". (Compl., ¶ 21.)

In September 2011, the District became aware that N.J.(m) and A.J. were no longer residing within the District and commenced a residency investigation. On September 13, 2011, Thedra McCrae, the Director of Pupil Personnel Services for the Malverne District, sent N.J. a letter informing her that the District had obtained information indicating that she was no longer a resident of the district ("the September 13 Letter"). (McCrae Aff., Ex. C.) The September 13 Letter advised N.J. that if she disputed the allegation of non-residency, she could arrange a meeting with McCrae, where N.J. and the District would have the opportunity to present evidence. (Id.)

On September 19, 2011, N.J. sent an email to the principals of N.J.(m) and A.J.'s schools, stating that she did not have a permanent address. (Id. at Ex. D.) That same day, N.J., accompanied by another District parent, attended a meeting held by the District Registrar, Maureen Madden and McCrae to address the allegations of non-residency ("the Residency Meeting"). (McCrae Aff., ¶ 23–25.) At the conclusion of the Residency Meeting, the District concluded that the Plaintiffs were not residents of the District, and therefore the students would be disenrolled from their schools. According to McCrae, at the conclusion of the Residency Meeting, she advised N.J. that a non-residency determination could be appealed to the Board of Education and provided N.J. with written instructions on how to appeal the non-residency determination. (McCrae Aff., ¶ 30–31.)

Following the Residency Meeting, also on September 19, 2011, N.J. sent a letter to the District stating that N.J.(m) and A.J. were eligible for protection as homeless students under the McKinney-Vento Act, 42 U.S.C. § 114334(a), and the New York Education Law. (McCrae Aff., Ex. F.) In addition, on September 20, 2011, McCrae received a call from Melanie Faby, an associate from the New York State Education Department Homeless Education Program, with regard to N.J.'s claim of homelessness. (McCrae Aff., ¶ 34.) That same day, McCrae forwarded all of the information related to N.J.'s case, including the September 19 Letter and the information provided by Faby, to Spiro Chris Colaitis, the Assistant Superintendent for Business in the District. (McCrae Aff., ¶ 36.)

By letter dated September 20, 2011 from Colaitis to N.J., Colaitis affirmed the District's non-residency determination and further found that N.J.(m) and A.J. did not qualify as "homeless" under the McKinney-Vento Act. (McCrae Aff., Ex. G.) The September 20, 2011 letter also informed N.J. of her right to appeal the decision to the Commissioner pursuant to New York Education Law § 310. (Id.)

In early October, the Plaintiffs attempted to appeal the finding that they were neither residents of the District nor homeless students, but their petition was rejected for insufficient service of process. (See letter from the New York State Education Department to the Malverne District, October 12, 2011, McCrae, Ex. I.) On November 16, 2011, the Plaintiffs filed another petition appealing the District's determination to the Commissioner pursuant to New York Education Law § 310 ("the section 310 appeal"), as well as a stay application that would permit N.J.(m) and A.J. to remain at their schools pending the Commissioner's ruling on their section 310 appeal.

According to the Plaintiffs, the NYSED informed them by phone on November 30, 2011 that their application for a stay was denied. (Compl., ¶ 28.) The NYSED also confirmed the denial of the stay application to N.J. in a December 1, 2011 letter. (McCrae Aff., Ex. J.) As a result of the denial of the stay application, on December 5, 2011, the District sent a letter to N.J. stating that, as of the end of the day on December 6, 2011, N.J.(m) and A.J. would no longer be permitted to attend school within the District. (McCrae Aff., Ex. K.)

On December 6, 2011, N.J., individually and as parent and natural guardian of N.J.(m) and A.J. commenced the instant action against the State of New York, the New York State Education Department, and the Malverne Union Free School District alleging violations of the federal McKinney-Vento Act, 42 U.S.C. § 11431, *et seq.*, New York Education Law § 3209, and 42 U.S.C. § 1983. In addition, by order to show cause, the Plaintiffs filed an application for a Temporary Restraining Order and Preliminary Injunction, seeking to enjoin the Defendants from disenrolling the plaintiff children from the District schools pending the resolution of their section 310 appeal to the NYSED.

On December 12, 2011, the Court held a hearing on the order to show cause. The Court is not aware whether the District had actually excluded the plaintiff children from the District schools as of the date of the hearing. After hearing argument from counsel for all parties, the Court rendered a decision on the record granting the preliminary injunction and stated that a short written decision would follow. This order memorializes the Court's decision rendered on the record at the hearing.

## II.  DISCUSSION

**A.  The McKinney-Vento Act and its Implementation under the New York Education Law**

The McKinney–Vento Act ("the Act") was enacted in 1987 "to provide urgently needed assistance to protect and improve the lives and safety of the homeless . . . ." Pub.L. No. 100–77, 101 Stat. 525 (codified at 42 U.S.C. § 11431 (1988)).  In 2002, the Act was reauthorized as part of the No Child Left Behind Act (NCLBA).  Pub.L. No. 107–110, 115 Stat. 1989.  The Act requires states to assure that each child of a homeless individual and each homeless youth have access to a free and appropriate public education.  42 U.S.C. § 11431.  Under the Act, Congress authorized the Secretary of Education to grant funds to the states that comply with the provisions of the Act.  Id. § 11432.  By accepting the federal funds, New York assumed the obligation to comply with the Act's requirements.  42 U.S.C. § 11432(c).

The Act defines homeless children and youths, in relevant part, as:

> (A) [I]ndividuals who lack a fixed, regular, and adequate nighttime residence . . . and
> (B) includes—
> (i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardships, or a similar reason; are living in motels, hotels, trailer parks, or camp grounds due to a lack of alternative adequate accommodations; are living in emergency or traditional shelters; are abandoned in hospitals; or are awaiting foster care placement.

42 U.S.C. § 11434a(2)(A),(B)(i).

As part of its purpose to "ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education, . . . .as provided to other children and youths," id. § 11431, the Act requires that each state prepare "a plan to provide for the education of homeless children and youths within the State". Id. § 11432(g)(1). Pursuant to this plan, if it is in the best interest of the child, the local educational agency ("LEA") is required to continue a child's education in his or her school of origin for the duration of

homelessness. Id. § 11432(g)(3)(A)(i). Moreover, as a condition for a state receiving the federal funds, the LEA's must implement a system to provide necessary services for homeless children, including, with certain limitations, transportation to and from the school of origin. § 11432(e)(3)(E)(i)(III).

With respect to dispute resolution, the Act requires that the state "shall" include "a description of procedures for the prompt resolution of disputes regarding the educational placement of homeless children and youths". Id. § 11432(g)(1)(C). Of importance, in the event a dispute arises over school enrollment, the Act requires that the child "*shall* immediately be admitted to the school in which enrollment is sought, pending resolution of the dispute." Id. at § 11432(g)(3)(E)(i) ("Pendency Provision") (emphasis added).

New York Education Law § 3209 incorporates the requirements of the McKinney-Vento Act and sets forth the provisions for the education of homeless children within the state. Under New York law, an individual between the ages of five and twenty-one who has not yet received a high school diploma is entitled to attend a public school on a tuition free basis. N.Y. Educ. L. § 3202. However, this right is not an absolute right to attend any public school in New York, but rather is limited to attending public schools within the school district where the individual is a resident. Id. In the event a child is homeless, this residency restriction is modified to allow a homeless child to attend a public school in either: "(1) the school district of current location; (2) the school district of origin; or (3) a school district participating in a regional placement plan". N.Y. Educ. L. § 3209(2)(a); see also N.Y. Educ. L. § 3202(8) ("A homeless child, . . . shall be entitled to attend a public school without the payment of tuition, in accordance with the provisions of section thirty-two hundred nine of this article.").

7

When a dispute arises regarding school selection for a homeless child or youth, "including, but not limited to, disputes regarding transportation and/or a child's or youth's status as a homeless child", the Commissioner has promulgated regulations in accordance with Education Law § 3209 and the McKinney-Vento Act providing in relevant part that:

> Each school district shall:
>
> (a) establish procedures, in accordance with [McKinney-Vento Act], 42 U.S.C. § 11432(g)(3)(E), for the prompt resolution of disputes regarding school selection or enrollment of a homeless child or youth . . .;
>
> (b) provide a written explanation, including a statement regarding the right to appeal pursuant to [McKinney-Vento Act], 42 U.S.C. section 11432(g)(3)(E)(ii), the name, post office address and telephone number of the local educational agency liaison and the form petition for commencing an appeal to the commissioner pursuant to Education Law, section 310 of a final determination regarding enrollment, school selection and/or transportation, to the homeless child's or youth's parent or guardian, if the school district declines to either enroll and/or transport such child or youth to the school of origin or a school requested by the parent or guardian . . .; and
>
> (c) delay for 30 days the implementation of a final determination to decline to either enroll in and/or transport the homeless child or youth or unaccompanied youth to the school of origin or a school requested by the parent or guardian or unaccompanied youth; provided that if the parent or guardian of a homeless child or youth or unaccompanied youth commences an appeal to the commissioner pursuant to Education Law, section 310 with a stay application within 30 days of such final determination, the homeless child or youth or unaccompanied youth shall be permitted to continue attending the school he or she is enrolled in at the time of the appeal until the commissioner renders a decision on the stay application.

8 N.Y.C.R.R. § 100.2(x)(7)(ii).  Accordingly, even when a section 310 appeal is pending, under New York law, a school may disenroll a child that the district has determined is not homeless, if the Commissioner denies the stay application.

8

Here, because the Lynbrook Residence was located in the District, the public schools located within the District are N.J.(m) and A.J.'s schools of origin under both the McKinney–Vento Act and the Education Law. See 42 U.S.C. § 11432(g)(3)(G) (defining "school or origin" as "the school that the child or youth attended when permanently housed or the school in which the child or youth was last enrolled"); N.Y. Educ. L. § 3209(c) ("The term "school district of origin" shall mean the school district within the state of New York in which the homeless child was attending a public school on a tuition-free basis or was entitled to attend when circumstances arose which caused such child to become homeless, . . . .").

According to the Plaintiffs, because the state law makes it discretionary to stay an alleged homeless student's disenrollment pending the outcome of a section 310 appeal of the school's decision, the state law directly conflicts with the Act's mandatory Pendency Provision. Thus, the Plaintiffs argue that by denying their request for a stay while their section 310 appeal is pending, the Defendants have violated the McKinney-Vento Act and their rights under the Act. The Plaintiffs seek a preliminary injunction preventing the Defendants from disenrolling the plaintiff children and requiring the Defendants to pay for their transportation to the schools in the District pending the resolution of the section 310 appeal.

## B.  Legal Standard for a Preliminary Injunction

"In order to justify a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; and  2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.' Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) (quoting Almontaser v. N.Y. Dep't of Educ., 519 F.3d 505, 508 (2d. Cir. 2008)).  Generally, the purpose of a preliminary injunction is to preserve the status of

the parties until a determination on the merits of the plaintiffs' claims can be made. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).  However, "[w]hen, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Metro. Taxicab, 615 F.3d at 156 (quoting Cnty. of Nassau v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008)); Lynch v. City of New York, 589 F.3d 94, 98 (2d Cir. 2009).

A party seeking such a "mandatory injunction" faces a higher burden. D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 510 (2d Cir. 2006) (citing Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33–34 (2d Cir.1995)).  Indeed, this type of "mandatory preliminary injunction" should only be granted "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Cacchillo v. Insmed, Inc., 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks omitted).  "This higher standard is particularly appropriate when a plaintiff seeks a preliminary injunction against a government body such as a school district." Cave v. East Meadow Union Free School Dist., 480 F. Supp. 2d 610, 631–32 (E.D.N.Y. 2007) (citing D.D. ex rel. V.D.,465 F.3d at 510, citing Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006)); Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000).

### C.  Whether the Court Should Grant the Preliminary Injunction

The Plaintiffs argue that the Pendency Provision of the McKinney-Vento Act requires an "automatic preliminary injunction", and operates as an "absolute rule" requiring the Court to grant the preliminary injunction without consideration of their likelihood of success on the merits or irreparable harm.  Again, the Pendency Provision states that in the event a dispute arises over

school enrollment, the Act requires that the child "shall immediately be admitted to the school in which enrollment is sought, pending resolution of the dispute." 42 U.S.C. § 11432(g)(3)(E)(i).

In support of this argument, the Plaintiffs cite to Zvi D. v. Ambach, 694 F.2d 904 (2d Cir. 1982), where the Second Circuit addressed the standard for granting a preliminary injunction pursuant to a similar provision in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, which stated that during the pendency of administrative and judicial proceedings challenging a child's educational placement "the child shall remain in the then current education placement until all such proceedings have been completed". Id. at 906 (citing 20 U.S.C. § 1415(e)(3). This provision of the IDEA is referred to as the "stay put" provision. The Second Circuit held that the stay put provision of the IDEA constituted an "automatic preliminary injunction" and "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of the hardships." Id.

However, the cases imposing an automatic preliminary injunction under the stay put rule are distinguishable. The stay put rule applies to any proceeding where a plaintiff is challenging the merits of a claim for a child's educational placement under IDEA. This includes actions commenced in the United States District Court for judicial review of an administrative decision regarding a child's educational placement, as well as any appeal of the district court's decision. See Ringwood Bd. of Educ. v. K.H.J. ex rel. K.F.J., 469 F. Supp. 2d 267, 269-270 (D.N.J. 2006). Thus, where the issue before the court is the merits of the plaintiff's underlying IDEA claim, the stay put provision requires an automatic preliminary injunction.

By contrast, the issue before this Court is not the merits of the Plaintiffs' claim for enrollment in the District under the McKinney-Vento Act. That dispute is the subject of the

pending section 310 appeal before the NYSED.  The case before this Court involves the procedural protections of the Act and the Defendants' compliance with the Act's dispute resolution requirements.  Indeed, whether the Pendency Provision applies to any proceeding addressing an enrollment dispute under the Act beyond the school district's determination is precisely the issue before this Court.   Accordingly, it is the Plaintiffs likelihood of success of prevailing on this claim that guides the Court's analysis.

Nevertheless, even assuming an automatic preliminary injunction is warranted, it would not impact the outcome of the Court's decision.  As set forth below, the Court examines the traditional preliminary injunction considerations under the heightened mandatory injunction standards articulated above, and finds that a preliminary injunction is warranted.

**1. Likelihood of Success on the Merits**

Although the Plaintiffs assert a number of claims in the complaint, the basis for seeking the preliminary injunction is their contention that the Defendants violated the McKinney-Vento Act, and their rights under the McKinney-Vento Act, by denying them a stay of disenrollment while their section 310 appeal is pending before the NYSED.

As an initial matter, the parties heavily dispute the question of whether the plaintiffs qualify as "homeless".  According to the Defendants, the Plaintiffs are not entitled to a preliminary injunction if they cannot show a likelihood of success on their assertion of homelessness.  Not so.  As interpreted by the Commissioner, the Act's dispute resolution requirements apply to school enrollment disputes regarding "a child's or youth's <u>status</u> as a homeless child or unaccompanied youth".  8 N.Y.C.R.R. § 100.2(x)(7)(ii)(a) (emphasis added).  The Court finds the Defendants' circular reasoning—where a child is entitled to a stay of disenrollment during a dispute over his or her status as homeless child only if the child is found

to be homeless—to be unavailing and unsupported by the text of the Act, which does not condition the Pendency Provision on a likelihood of success. Accordingly, for the purposes of determining whether the Court should grant a preliminary injunction, the relevant inquiry is whether the Plaintiffs are likely to succeed in showing that the Defendants, in promulgating the state law, denying the stay application, and attempting to disenroll the plaintiff children, have violated the McKinney-Vento Act and the Plaintiffs' rights thereunder.

Here, the Court finds that the Plaintiffs have shown a likelihood of success on this claim. The McKinney-Vento Act clearly contemplates that the children remain in the subject school "pending resolution of the dispute". The purpose of this provision "is that a homeless child not suffer while a school district determines whether he or she is properly enrolled". L.R. ex rel. G.R. v. Steelton-Highspire School Dist., No. 10-CV-468, 2010 WL 1433146, at *5 (M.D. Pa. April 7, 2010). Although not explicitly stated, in the Court's view, the Act provides that an allegedly homeless child shall remain admitted to the school in which enrollment is sought pending the <u>final</u> resolution of the dispute, not simply the resolution at the school level.

While the Court takes no position on what stage in the dispute resolution process the decision becomes final, the Plaintiffs have shown a likelihood of success on their contention that the Pendency Provision at least covers the section 310 appeal of the District's decision to the NYSED. Moreover, the likelihood of the Plaintiffs' success on this claim is further supported by the 2009 and 2010 U.S. Department of Education "Student Achievement and School Accountability Program" reports for the State of New York, which have both raised questions about New York's compliance with the Act's Pendency Provision. See U.S. Dep't of Education, Student Achievement and School Accountability Program, New York State Education Department, March 23–27, 2009, 19 (2009) (finding that "students are not enrolled in school

13

during the appeal process nor were they provided transportation, as required by the McKinney-Vento Act" and requiring the NYSED to issue "a written memorandum clarifying that during a dispute resolution process at the LEA and SEA levels, the LEAs of origin and residence must offer immediate enrollment in the requested district and provide transportation to the school in which the child is placed until the dispute is resolved"); U.S. Dep't of Education, <u>Student Achievement and School Accountability Program</u>, New York State Education Department, May 24–28, 2010, 23 (2010) (finding that "[t]he NYSED has not ensured that its LEAs have procedures for the prompt resolution of disputes and a process to direct LEAs on how to resolve enrollment disputes consistent with LEA requirements stated in section 722(g)(3)(E)" and requiring that the NYSED submit a report to the U.S. Department of Education including, among other information, the number of students who were not immediately enrolled in their school of origin when they initiated a dispute, and further stating that "[i]f any of these points of investigation involve non-compliant procedures or outcomes that are disproportionately unfavorable to the disputants, the NYSED must revise its dispute resolution policy and guidance to all LEAs informing them of steps it will take to ensure compliance and equitable outcomes for students who report that they are experiencing homelessness and submit these revised policies and guidance documents to [the Department of Education]") . Accordingly, the Plaintiffs have satisfied the first element for obtaining a preliminary injunction.

 **2. Irreparable Harm**

 With respect to irreparable harm, the Plaintiffs argue that the McKinney-Vento Act, by virtue of including the Pendency Provision, creates a presumption that a failure to comply with the provisions would cause irreparable harm. That may be so. However, even if this were not the case, the Court nevertheless finds that irreparable harm exists. It has been held that

"interruption of a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury." Ross v. Disare, 500 F. Supp. 928, 934 (S.D.N.Y. 1977). Here, the potential injury to the plaintiff children is not simply changing schools once, which, while disruptive, may not rise to the level of irreparable harm. Rather, absent a stay, the plaintiff children in this case risk having to change schools twice in a relatively short time period if their appeal is successful. The Court finds that this constitutes an irreparable harm sufficient to warrant a preliminary injunction.

### 3. Balance of the Equities and the Public Interest

The District's decision to disenroll the plaintiff children, and the NYSED's decision to deny the plaintiff children a stay of disenrollment pending the outcome of the section 310 appeal, appear to directly conflict with the Pendency Provision of the McKinney-Vento Act, "which grants special rights and protections to children experiencing homelessness in order to ensure school stability and academic success". L.R. ex rel. G.R. v. Steelton-Highspire School Dist., No. 10-CV-468, 2010 WL 1433146, at *5 (M.D. Pa. April 7, 2010). The benefit to the plaintiff children of uninterrupted education during their formative middle and high school years, due to circumstances outside of their control, far outweighs the harm to the District in continuing their enrollment. Although the harm will be less severe in the event the children are found not to be homeless, the Court is unwilling to gamble with a child's education. Although the District will face the additional burden of expending the costs for transporting the plaintiff children to their schools within the District during the pendency of the section 310 appeal, these funds are provided by the federal government by the Act for precisely this purpose.

In passing the Act, Congress has made it clear that the laws of a state shall "ensure that homeless child and youths are afforded the same free, appropriate public education as provided to other children and youths". 42 U.S.C. § 11431(2). This expression of the public interest behind the Act would be undermined by treating a potentially homeless student differently than other students simply because no final determination has been made on whether he or she qualifies as homeless. Thus, the Court finds that the balance of the equities and the public interests also weigh in favor of granting the preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Plaintiffs' motion for a preliminary injunction is granted, and it is further

**ORDERED**, that the District is enjoined from disenrolling N.J.(m) and A.J. from their respective schools within the District until a decision has been rendered on their section 310 appeal to the NYSED, and it is further

**ORDERED**, that the District shall arrange for transportation for N.J.(m) and A.J. to their respective schools within the District consistent with the District's obligations under the McKinney-Vento Act and New York Education Law § 3209, and it is further

**ORDERED**, that the parties are afforded until Friday, December 16, 2011, to file a brief not to exceed ten pages in length addressing this Court's finding that the proper inquiry for showing a likelihood of success on the merits was not the Plaintiffs' homelessness, but rather the Plaintiffs likelihood of showing the state regulation permitting the Commissioner to deny a stay of disenrollment during the pendency of a section 310 appeal is in conflict with the Pendency Provision of the McKinney-Vento Act.

**SO ORDERED.**
Dated: Central Islip, New York
December 13, 2011

                                              __*/s/ Arthur D. Spatt*___
                                              ARTHUR D. SPATT
                                        United States District Judge